# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A CRIMINAL COMPLAINT AND ARREST WARRANT

1. I, Patricia A. Richardson, a Task Force Officer ("TFO") with the United States Drug Enforcement Agency ("DEA"), Cleveland, Ohio, being duly sworn, hereby depose and state as follows.

2. I am employed as an agent with the MEDWAY Drug Enforcement Agency ("MEDWAY") in Wayne County, Ohio, currently serving in the role of TFO with the DEA in the Cleveland District Office. I am a deputized TFO within the meaning of Title 18, United States Code, Section 2510(7).

3. I attended and graduated from the Buckeye State Police Academy, an affiliate of the Kent State University and earned my State of Ohio Police Officer Training Academy certification in June 2009. I served as a police officer with the Dalton Police Department, Dalton, Ohio, for approximately nine months before accepting a position with MEDWAY in 2010. During my academy training, I received comprehensive, formalized instruction in matters such as drug identification, detection, money laundering techniques, asset identification, seizure, and forfeiture. In my capacity as an agent with MEDWAY, I have had training and conducted investigations involving the illegal diversion of pharmaceutical controlled substances, and I participated in numerous investigations targeting drug traffickers.

4. I have been employed as a TFO with the DEA since September 2012. In my capacity as a DEA TFO, I investigate federal drug offenses under Title 21 of the United States Code. During these investigations, I have debriefed defendants, sources of information, and other witnesses who have personal knowledge regarding the illegal use of controlled substances and controlled substance distribution. During my career, I have been either lead investigator or

participated in many criminal investigations involving violations of the Controlled Substance Act of the United States Code and applicable laws set forth in the Ohio Revised Code.

5. The facts contained in this Affidavit are based upon my personal knowledge of the investigation, in addition to the knowledge, training, experience, and observations of other law enforcement officers. All observations and information referenced below that were not personally made or learned by me were relayed to me by the persons who made such observations or learned such information, to include being provided information verbally or in written format. This Affidavit contains information necessary to support probable cause for this application. This Affidavit is not intended to be a complete review of all topics discussed in interviews or conversations referenced herein. In addition, this Affidavit is not intended to include each and every fact and matter observed or known by me, other law enforcement officers, or the government.

6. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Section 841 (illegal trafficking in controlled substances) and Title 18, United States Code, Sections 1347 (health care fraud) have been committed by MARTIN ESCOBAR ("ESCOBAR").

## PROBABLE CAUSE

7. ESCOBAR is a medical doctor licensed by the State of Ohio Medical Board since 2001.

8. ESCOBAR operates Lake Shore Medical Center, an internal medicine and pain management practice in Lake Milton, Ohio, in the Northern District of Ohio, Eastern Division.

9. The Controlled Substances Act ("CSA"), 21 U.S.C. § 841, governs the manufacture, distribution, and dispensing of controlled substances in the United States. With

2

limited exceptions, the CSA makes it "unlawful for any person knowingly or intentionally" to "distribute or dispense . . . a controlled substance" or conspire to do so.

10. The term "controlled substance" means a drug or other substance included in Schedules I, II, III, IV, and V of the CSA. The term "dispense" means to deliver a controlled substance by, or pursuant to the lawful order of, a practitioner. It also includes the prescribing and administering of a controlled substance. The term "distribute" means to deliver (other than by administrating or dispensing) a controlled substance. The term "practitioner" means a physician, medical doctor, dentist, or other person licensed, registered, or otherwise permitted by the United States or the jurisdiction in which he or she practiced, to distribute or dispense a controlled substance in the course of professional practice.

11. Individual practitioners who want to distribute or dispense controlled substances in the course of professional practice are required to register with the Attorney General of the United States before they are legally authorized to do so. Such individual practitioners are assigned a registration number by the DEA.

12. Practitioners registered with the Attorney General are authorized under the CSA to write prescriptions for, or to otherwise dispense, Schedule II, III, IV, and V controlled substances, so long as they comply with the requirements of their registrations. 21 U.S.C. § 822(b).

13. As a medical doctor licensed in Ohio, ESCOBAR is a "practitioner" within the meaning of the CSA. He is also registered to prescribe controlled substances under DEA registration number BE7243025.

14. For medical doctors, compliance with the terms of their registrations means that they can issue a prescription for a controlled substance to a patient only if the prescription is

3

"issued for a legitimate medical purpose by an individual practitioner acting in the usual course of professional practice." 21 C.F.R. § 1306.04(a). A doctor violates the CSA and Code of Federal Regulations if he issues a prescription for a controlled substance outside the usual course of professional medical practice and not for a legitimate medical purpose. 21 C.F.R. § 1306.04(a).

15. The scheduling of controlled substances is based on each substance's potential for abuse, among other considerations. Relevant for this Affidavit, drugs that have a high potential for abuse and could lead to severe psychological or physical dependence are classified as Schedule II controlled substances. Drugs that have a lower potential for abuse and could lead to limited physical or psychological dependence are classified as Schedule IV controlled substances. 21 U.S.C. § 812.

16. Oxycodone and hydrocodone belong to the opiate analgesic class of drugs used to treat moderate to severe pain. These drugs are commonly called opioids and are listed as Schedule II controlled substances with a high risk of addiction and abuse. Oxycodone is sold under the brand name Roxicodone. Hydrocodone is combined with acetaminophen and sold under the brand name Norco.

17. Dextroamphetamine–amphetamine belongs to the central nervous system stimulant class of drugs and is listed as a schedule II controlled substance. It is used to treat attention deficit hyperactivity disorder and narcolepsy. The drug is sold under the brand name Adderall.

18. Diazepam, lorazepam and alprazolam belong to a class of drugs called benzodiazepines and are listed as schedule IV controlled substances. These drugs are used to

treat anxiety, seizures, and insomnia, among other conditions. They are sold under brand names Valium, Ativan and Xanax.

19. Controlled substances prescribed in combination can often produce dire effects on patients. In 2016, the United States Centers for Disease Control and Prevention ("CDC") recommended that physicians avoid prescribing opioids and benzodiazepines in combination - such as hydrocodone or oxycodone with diazepam, lorazepam or alprazolam - whenever possible. Together, the drugs can cause severe respiratory depression leading to death. Over 30% of opioid overdoses involve benzodiazepine use. On August 31, 2016, the United States Food and Drug Administration ("FDA") issued a "black box" warning for prescribing opioids in combination with benzodiazepines. The warning stated in part:

> FDA is warning patients and their caregivers about the serious risks of taking opioids along with benzodiazepines or other central nervous system (CNS) depressant medicines, including alcohol. Serious risks include unusual dizziness or lightheadedness, extreme sleepiness, slowed or difficult breathing, coma, and death. These risks result because both opioids and benzodiazepines impact the CNS, which controls most of the functions of the brain and body.

20. Other controlled substance combinations also produce dangerous results. Opioids and stimulants prescribed together - such as hydrocodone or oxycodone and dextroamphetamine-amphetamine - are commonly called a "prescriptive speedball" because they produce a powerful depressant/stimulant effect similar to the combination of the illicit drugs heroin and cocaine, commonly known as a "speedball."

21. Prescription drugs, such as the opioids hydrocodone and oxycodone, the benzodiazepines alprazolam, lorazepam and diazepam, and the stimulant dextroamphetamine-amphetamine, can be sold on the illegal secondary market, such as at the street level, for significant sums of money.

5

22. Physicians test the urine of patients to whom they prescribe controlled substances in order to monitor for the presence of other, non-prescribed controlled substances, which could negatively interact with prescribed controlled substances to cause injury to, or death of, patients. These tests also monitor for the presence of the controlled substances that the physicians prescribe to patients. When a urine drug screen fails to detect the presence of a prescribed drug, it suggests that the patient is not taking the drug as directed in the prescription. A negative drug screen, particularly if repeated in a subsequent office visit, suggests that the patient is abusing the drug by taking it too frequently and in greater amounts than prescribed; or, that the patient is diverting the drug by selling it for profit on the illegal secondary market – such as at the street level. ESCOBAR operates an in-house drug testing laboratory in his own medical office to test patients for the presence of prescribed drugs and other substances, and he bills the government for providing this service.

23. Medicare provides medical insurance benefits to any person age 65 or older, to certain disabled persons, and to those with chronic renal disease who elect coverage. Medicare is a health care benefit program within the meaning of Title 18, United States Code, Sections 24(b) and 1347. Medicare Part B helps cover physician services, outpatient care, and supplies, when they are ordered by a doctor and medically necessary.

24. Medicaid is a federal health care benefit program designated to provide medical services to certain individuals and families with low income as outlined in the Social Security Act (Title 42, United States Code, Section 1396 *et seq.*). Medicaid is a health care benefit program within the meaning of Title 18, United States Code, Sections 24(b) and 1347.

25. While the Federal Government funds large portions of Medicaid, the program itself is largely administered by the states. The Ohio Department of Medicaid ("ODM")

administers Medicaid in Ohio, and it has received historically approximately 60% of its funds from federal sources. Ohio providers claim Medicaid reimbursement from ODM pursuant to written provider agreements. ODM receives, processes, and pays those claims according to Medicaid rules, regulations, and procedures.

26. A Medicaid Managed Care Organization ("Medicaid MCO") is a private managed care organization that contracts with ODM pursuant to Ohio Revised Code Section 5164.85 to provide Medicaid services. Medicaid MCOs are health care benefit programs within the meaning of Title 18, United States Code, Sections 24(b) and 1347.

27. Private health insurers ("private insurers") are also health care benefit programs under Title 18, United States Code, Sections 24(b) and 1347.

28. Medicare, Medicaid, Medicaid MCOs, and private insurers prohibit payment for items and services that are not "reasonable and necessary" to diagnose and treat an illness or injury. Medicare claim forms, for example, require the provider who made a claim for services to certify that the services are "medically indicated and necessary for the health of the patient." Pursuant to the rules and regulations of the Ohio Medicaid Program, including Medicaid MCOs, Medicaid only pays for services that are actually performed by qualified individuals, are medically necessary, and are provided in accordance with federal and state laws, rules and regulations. Medicaid, Medicaid MCOs, and private insurers similarly require providers to certify that services are medically necessary. Only claims that are medically necessary are entitled to reimbursement.

29. The American Medical Association assigns and publishes five-digit codes, known as the Current Procedural Terminology ("CPT") codes. The codes are a systematic listing of procedures and services performed or ordered by health care providers. The purpose of the

7

terminology is to provide uniform language that accurately describes medical, surgical, and diagnostic services and supplies, thereby providing an effective means for reliable nationwide communication among physicians, patients, and third parties.

30. Health care claim forms, both paper and electronic, contain certain patient information and service billing codes, including CPT codes. Health care programs have established payment schedules based on the codes billed by the provider. By designating a certain code, the provider certifies to the health care program that a given treatment is actually rendered in compliance with the code requirements and is medically necessary. These treatment billing codes are well known to the medical community, providers, and health care insurance companies. The procedures and services represented by CPT codes are health care benefits, items, and services within the meaning of Title 18, United States Code, Section 24(b). ESCOBAR uses the following CPT codes to bill for testing patients' urine for the presence of prescribed and non-prescribed drugs and other substances: 80307; 80361; 80320; 80335; 80358; 80345; 80356; 80365; 82575; 80353; 83986; 80324; 80346; and 80354.

31. Medicare Part D is an optional program offered to Medicare recipients that help cover prescription drug costs. Medicaid, Medicaid MCOs, and private insurers also provide prescription drug coverage for many of their members.

32. Like the payment of outpatient or other services, Medicare, Medicaid, Medicaid MCOs, and the private insurers only pay to fill drug prescriptions if those prescriptions are medically necessary. Controlled substance prescriptions that are written outside the usual course of medical practice and not for a legitimate medical purpose are medically unnecessary and ineligible for payment.

8

33. Evidence demonstrates that from approximately January 1, 2018 through May 8, 2019, ESCOBAR prescribed controlled substances outside the usual course of professional practice and not for a legitimate medical purpose, and in doing so, engaged in the following conduct:

    a. failed to establish an evidence based, objective diagnosis for patients' pain;

    b. performed inadequate patient physical and historical examinations;

    c. used false diagnoses to prescribe controlled substances;

    d. prescribed excessive doses of controlled substances;

    e. failed to consider other possible diagnostic tests and treatment modalities;

    f. failed to document in patient medical charts, the presence of intractable pain, and signs, symptoms and causes, and the nature of, the underlying disease and pain mechanism;

    g. unreasonably failed to consult with medical specialists in treating patients, including spinal diagnosticians, physiatrists, and psychologists;

    h. increased the doses of controlled substances without evidence of efficacy;

    i. failed to follow CDC guidelines that opioids are not first-line routine therapy for chronic pain;

    j. ignored signs of patient addiction or drug abuse, and failed to promptly consult with addiction medicine specialists or other substance abuse professionals to obtain a formal assessment of addiction or drug abuse;

9

k. prescribed controlled substances to patients for extended periods of time without obtaining appropriate imaging studies;

l. justified prescribing controlled substances by using inadequate imaging studies;

m. prescribed controlled substances, purportedly to treat psychiatric conditions, without properly diagnosing and documenting such conditions, and without securing psychiatric diagnoses from mental health professionals;

n. prescribed opioids and benzodiazepines together without a significant, valid medical diagnosis for either;

o. failed to follow the CDC guidelines that: "[c]linicians should avoid prescribing opioid medication and benzodiazepines concurrently whenever possible;"

p. in patient medical charts used non-modified templates, repopulated from visit to visit, containing false narratives of patient encounters, including falsifying reported patient pain levels;

q. prescribed "prescriptive speedball" combinations of controlled substances;

r. ignored urine drug screens, which were performed in ESCOBAR's own in-house office laboratory, indicating the absence of prescribed drugs in the urine of tested patients.

34. Patient 1, a patient of ESCOBAR, attended medical appointments with ESCOBAR on a monthly basis, between January 2018 and March 2019, complaining of back and neck pain. At each appointment ESCOBAR prescribed to Patient 1 significant amounts of

the opioid oxycodone hydrochloride ("oxycodone HCL"), and the benzodiazepine diazepam, which ESCOBAR caused Medicaid to be billed for. At each appointment ESCOBAR had Patient 1 submit to urine drug screens that tested for a variety of drugs and substances, which ESCOBAR billed Medicaid for, typically between $360 and $390. All of Patient 1's urine drug screen tests during this time period noted the absence of the prescribed oxycodone HCL in Patient 1's urine, but despite this ESCOBAR continued to prescribe this opioid to Patient 1.

35. Patient 2, a patient of ESCOBAR, attended medical appointments with ESCOBAR on a monthly basis, between March 2018 and February 2019, complaining of back pain. At each appointment ESCOBAR prescribed to Patient 2 significant amounts of the opioid hydrocodone and the benzodiazepine alprazolam, which ESCOBAR caused Medicaid to be billed for. ESCOBAR had Patient 2 submit to urine drug screens, which ESCOBAR billed Medicaid for. Nine (9) of Patient 2's monthly urine drug screen tests during this period noted the absence of the prescribed hydrocodone in Patient 2's urine, but despite this ESCOBAR continued to prescribe this opioid to Patient 2.

36. Patient 3, a patient of ESCOBAR, had medical appointments with ESCOBAR on a monthly, and sometimes bi-monthly, basis, between January 2018 and February 2019, complaining of back and neck pain. At each of these appointments ESCOBAR prescribed to Patient 3 significant amounts of the "prescriptive speedball" combination of hydrocodone-acetaminophen and dextroamphetamine-amphetamine, which ESCOBAR caused Medicaid to be billed for. ESCOBAR had Patient 3 submit to urine drug screens, which ESCOBAR billed Medicaid for. All of these urine drug screen tests noted the absence of the prescribed hydrocodone in Patient 3's urine, but ESCOBAR continued to prescribe this opioid to Patient 3.

11

Despite the negative urine drug screens, ESCOBAR wrote in Patient 3's medical chart, "no signs of potential drug abuse or diversion identified."

37. Patient 4, a patient of ESCOBAR, attended medical appointments with ESCOBAR between November 28, 2018 and May 8, 2019, complaining principally of back stiffness. ESCOBAR repeatedly falsified Patient 4's patient charts – for example at appointments on November 28, 2018, January 8, 2019, February 22, 2019 and March 21, 2019 – falsely claiming that Patient 4 was experiencing "burning" pain, and at a level of 8/10, when Patient 4 never described this to ESCOBAR, nor to his staff. ESCOBAR used the false statements that he wrote in Patient 4's chart claiming that Patient 4 was having burning pain at a level of 8/10, in part to falsely diagnose Patient 4 with sciatica. Sciatica is a medical condition that involves shooting pain that travels down the leg, and that can result in weakness or numbness in the leg or foot. The symptoms that Patient 4 did in fact provide to ESCOBAR did not support a diagnosis of sciatica.

38. ESCOBAR insisted on Patient 4 obtaining and providing him with an x-ray image of Patient 4's lower back, as ESCOBAR explained in an attempt to provide documentary support for his decision to prescribe opioids to Patient 4. When the report showed merely age appropriate degenerative disc disease, which most people of Patient 4's age experience, ESCOBAR said, "It happens to all of us…I got it, same problem like you" and continued to prescribe opioids to Patient 4.

39. ESCOBAR also prescribed a benzodiazepine to Patient 4 – lorazepam – and without initially warning Patient 4 about the dangers of taking this drug in combination with an opioid.

40. Over the course of Patient 4's visits with ESCOBAR, ESCOBAR, at Patient 4's request, repeatedly increased Patient 4's dose of opioids, from 21, to 84, to 112 pills per month.

41. ESCOBAR had Patient 4 submit to urine drug screens, none of which reported the drugs in Patient 4's system that ESCOBAR had been prescribing to Patient 4. During Patient 4's last visit with ESCOBAR, one of ESCOBAR's employees entered the patient exam room where Patient 4 was waiting to see ESCOBAR, and left a handwritten sticky note for ESCOBAR on top of a printout of Patient 4's then recent negative drug screen report. The note stated, "[Patient 4] no Lorazepam." After the medical assistant left the examination room, ESCOBAR walked into the room and picked up and reviewed this document, but did not mention the negative test to Patient 4, and instead issued Patient 4 yet another prescription for lorazepam, along with the opioid hydrocodone.

42. Consistent with the information described above, instances in which the evidence demonstrates that ESCOBAR knowingly and intentionally distributed and dispensed schedule II and schedule IV controlled substances in the Northern District of Ohio, Eastern Division, by issuing prescriptions outside the usual course of professional practice and not for a legitimate medical purpose, include those listed in the chart below:

| Patient # | Date Rx Written | Substance | Common Brand Name | Strength | Qty |
|---|---|---|---|---|---|
| 4 | 11/28/2018 | Hydrocodone-Acetaminophen | Norco | 5/325 mg | 21 |
| 4 | 1/8/2019 | Hydrocodone-Acetaminophen | Norco | 5/325 mg | 21 |
|  |  | Lorazepam | Ativan | 0.5 mg | 28 |
| 4 | 2/22/2019 | Hydrocodone-Acetaminophen | Norco | 5/325 mg | 21 |
|  |  | Lorazepam | Ativan | 0.5 mg | 28 |
| 4 | 3/21/2019 | Hydrocodone-Acetaminophen | Norco | 5/325 mg | 84 |
|  |  | Lorazepam | Ativan | 0.5 mg | 28 |
| 4 | 4/18/2019 | Hydrocodone-Acetaminophen | Norco | 5/325 mg | 112 |
|  |  | Lorazepam | Ativan | 0.5 mg | 28 |
| 4 | 5/8/2019 | Hydrocodone-Acetaminophen | Norco | 5/325 mg | 112 |
|  |  | Lorazepam | Ativan | 0.5 mg | 28 |

| | | | | | |
|---|---|---|---|---|---|
| 2 | 4/10/2018 | Hydrocodone-Acetaminophen | Norco | 7.5/325 mg | 112 |
| | | Alprazolam | Xanax | 1 mg | 112 |
| 2 | 5/7/2018 | Hydrocodone-Acetaminophen | Norco | 7.5/325 mg | 112 |
| | | Alprazolam | Xanax | 1 mg | 112 |
| 2 | 6/4/2018 | Hydrocodone-Acetaminophen | Norco | 7.5/325 mg | 112 |
| | | Alprazolam | Xanax | 1 mg | 112 |
| 2 | 7/2/2018 | Hydrocodone-Acetaminophen | Norco | 7.5/325 mg | 112 |
| | | Alprazolam | Xanax | 1 mg | 112 |
| 2 | 7/30/2018 | Hydrocodone-Acetaminophen | Norco | 7.5/325 mg | 112 |
| | | Alprazolam | Xanax | 1 mg | 112 |
| 2 | 8/27/2018 | Hydrocodone-Acetaminophen | Norco | 7.5/325 mg | 112 |
| | | Alprazolam | Xanax | 1 mg | 112 |
| 2 | 9/24/2018 | Hydrocodone-Acetaminophen | Norco | 7.5/325 mg | 112 |
| | | Alprazolam | Xanax | 1 mg | 112 |
| 2 | 10/22/2018 | Hydrocodone-Acetaminophen | Norco | 7.5/325 mg | 112 |
| | | Alprazolam | Xanax | 1 mg | 112 |
| 2 | 11/19/2018 | Hydrocodone-Acetaminophen | Norco | 7.5/325 mg | 112 |
| | | Alprazolam | Xanax | 1 mg | 112 |
| 2 | 12/17/2018 | Hydrocodone-Acetaminophen | Norco | 7.5/325 mg | 112 |
| | | Alprazolam | Xanax | 1 mg | 112 |
| 2 | 1/14/2019 | Hydrocodone-Acetaminophen | Norco | 7.5/325 mg | 112 |
| | | Alprazolam | Xanax | 1 mg | 112 |
| 2 | 2/11/2019 | Hydrocodone-Acetaminophen | Norco | 7.5/325 mg | 112 |
| | | Alprazolam | Xanax | 1 mg | 112 |
| 3 | 3/7/2018 | Hydrocodone-Acetaminophen | Norco | 7.5/325 mg | 120 |
| | | Dextroamphetamine-Amphetamine | Adderall | 20 mg | 56 |
| 3 | 3/29/2018 | Hydrocodone-Acetaminophen | Norco | 7.5/325 mg | 120 |
| | | Dextroamphetamine-Amphetamine | Adderall | 20 mg | 28 |
| 3 | 4/26/2018 | Hydrocodone-Acetaminophen | Norco | 7.5/325 mg | 120 |
| | | Dextroamphetamine-Amphetamine | Adderall | 20 mg | 28 |
| 3 | 5/24/2018 | Hydrocodone-Acetaminophen | Norco | 7.5/325 mg | 120 |
| | | Dextroamphetamine-Amphetamine | Adderall | 20 mg | 28 |
| 3 | 6/21/2018 | Hydrocodone-Acetaminophen | Norco | 7.5/325 mg | 120 |
| | | Dextroamphetamine-Amphetamine | Adderall | 20 mg | 28 |
| 3 | 7/19/2018 | Hydrocodone-Acetaminophen | Norco | 7.5/325 mg | 120 |
| | | Dextroamphetamine-Amphetamine | Adderall | 20 mg | 28 |
| 3 | 8/16/2018 | Hydrocodone-Acetaminophen | Norco | 7.5/325 mg | 120 |
| | | Dextroamphetamine-Amphetamine | Adderall | 20 mg | 28 |

| | | | | | |
|---|---|---|---|---|---|
| 3 | 9/13/2018 | Hydrocodone-Acetaminophen | Norco | 7.5/325 mg | 120 |
| | | Dextroamphetamine-Amphetamine | Adderall | 20 mg | 28 |
| 3 | 11/8/2018 | Hydrocodone-Acetaminophen | Norco | 7.5/325 mg | 120 |
| | | Dextroamphetamine-Amphetamine | Adderall | 20 mg | 28 |
| 3 | 12/6/2018 | Hydrocodone-Acetaminophen | Norco | 7.5/325 mg | 120 |
| | | Dextroamphetamine-Amphetamine | Adderall | 20 mg | 28 |
| 3 | 1/7/2019 | Hydrocodone-Acetaminophen | Norco | 7.5/325 mg | 120 |
| | | Dextroamphetamine-Amphetamine | Adderall | 20 mg | 28 |
| 1 | 3/7/2018 | Oxycodone HCL | Roxicodone | 20 mg | 112 |
| | | Diazepam | Valium | 10 mg | 84 |
| 1 | 3/31/2018 | Oxycodone HCL | Roxicodone | 20 mg | 112 |
| | | Diazepam | Valium | 10 mg | 84 |
| 1 | 5/2/2018 | Oxycodone HCL | Roxicodone | 20 mg | 112 |
| | | Diazepam | Valium | 10 mg | 84 |
| 1 | 5/31/2018 | Oxycodone HCL | Roxicodone | 20 mg | 112 |
| | | Diazepam | Valium | 10 mg | 84 |
| 1 | 6/29/2018 | Oxycodone HCL | Roxicodone | 20 mg | 112 |
| | | Diazepam | Valium | 10 mg | 84 |
| 1 | 7/26/2018 | Oxycodone HCL | Roxicodone | 20 mg | 112 |
| | | Diazepam | Valium | 10 mg | 84 |
| 1 | 8/23/2018 | Oxycodone HCL | Roxicodone | 20 mg | 112 |
| | | Diazepam | Valium | 10 mg | 84 |
| 1 | 9/20/2018 | Oxycodone HCL | Roxicodone | 20 mg | 112 |
| | | Diazepam | Valium | 10 mg | 84 |
| 1 | 10/18/2018 | Oxycodone HCL | Roxicodone | 20 mg | 112 |
| | | Diazepam | Valium | 10 mg | 84 |
| 1 | 11/15/2018 | Oxycodone HCL | Roxicodone | 20 mg | 112 |
| | | Diazepam | Valium | 10 mg | 84 |
| 1 | 12/13/2018 | Oxycodone HCL | Roxicodone | 20 mg | 112 |
| | | Diazepam | Valium | 10 mg | 84 |
| 1 | 1/10/2019 | Oxycodone HCL | Roxicodone | 20 mg | 112 |
| | | Diazepam | Valium | 10 mg | 84 |
| 1 | 2/7/2019 | Oxycodone HCL | Roxicodone | 20 mg | 112 |
| | | Diazepam | Valium | 10 mg | 84 |

43. Consistent with the information described above, in addition to violating the CSA, evidence demonstrates that ESCOBAR committed healthcare fraud in violation of Title 18,

United States Code, Section 1347, by knowingly and willfully executing, and attempting to execute, a scheme and artifice to defraud health care benefit programs, as defined in Title 18, United States Code, Section 24(b), that is Medicare, Medicaid, Medicaid MCOs, and private insurers, and to obtain by means of false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of Medicare, Medicaid, Medicaid MCOs, and private insurers, in connection with the delivery of and payment for health care benefits, items, and services.

44. The evidence described above demonstrates that it was part of the scheme to defraud and obtain money and property that ESCOBAR prescribed controlled substances outside the usual course of medical practice and not for a legitimate medical purpose, thus resulting in Medicare, Medicaid, Medicaid MCOs, and private insurers paying for medically-unnecessary controlled substances.

45. The evidence described above further demonstrates that it was part of the scheme to defraud and obtain money and property, that ESCOBAR had patients submit to medically unnecessary urine drug screen tests – including the testing of Patient 1, Patient 2 and Patient 3 referenced above – thus resulting in Medicare, Medicaid, Medicaid MCOs, and private insurers paying for medically-unnecessary medical services.

46. Consistent with the evidence described above, on or about the dates listed below, ESCOBAR executed and attempted to execute the scheme described above, by submitting and causing the submission of the claims for reimbursement set forth below:

| Patient # | Date of Service | Insurance | Claim Amounts | Description of Services |
|---|---|---|---|---|
| 2 | 7/30/2018 | Medicaid | $390.00 | Urine drug screen - 80361, 80320, 80335, 80358, 80345, 80356, 80365, 82575, 80353, 80354, 83986, 80324, 80346 |
| | | | $99.72 | Hydrocodone-Acetaminophen |
| | | | $120.02 | Alprazolam |

16

| | | | | |
|---|---|---|---|---|
| 2 | 8/27/2018 | Medicaid | $390.00 | Urine drug screen - 80361, 80320, 80335, 80358, 80345, 80356, 80365, 82575, 80353, 80354, 83986, 80324, 80346 |
| | | | $99.72 | Hydrocodone-Acetaminophen |
| | | | $145.83 | Alprazolam |
| 2 | 9/24/2018 | Medicaid | $330.00 | Urine drug screen - 80361, 80358, 80356, 80365, 80353, 83986, 80320, 80335, 80345, 80324, 80346 |
| | | | $99.72 | Hydrocodone-Acetaminophen |
| | | | $145.83 | Alprazolam |
| 2 | 10/22/2018 | Medicaid | $240.00 | Urine drug screen - 80361, 80358, 80356, 80365, 80353, 80320, 80335, 80345, 80324 |
| | | | $99.72 | Hydrocodone-Acetaminophen |
| | | | $145.83 | Alprazolam |
| 2 | 11/19/2018 | Medicaid | $390.00 | Urine drug screen - 80361, 80358, 80356, 80365, 80353, 80320, 80335, 80345, 80324 |
| | | | $99.72 | Hydrocodone-Acetaminophen |
| | | | $145.83 | Alprazolam |
| 2 | 12/17/2018 | Medicaid | $390.00 | Urine drug screen - 80361, 80320, 80335, 80358, 80345, 80356, 80365, 82575, 80353, 80354, 83986, 80324, 80346 |
| | | | $99.72 | Hydrocodone-Acetaminophen |
| | | | $145.83 | Alprazolam |
| 2 | 2/11/2019 | Medicaid | $390.00 | Urine drug screen - 80361, 80320, 80335, 80358, 80345, 80356, 80365, 82575, 80353, 80354, 83986, 80324, 80346 |
| | | | $104.35 | Hydrocodone-Acetaminophen |
| | | | $152.65 | Alprazolam |
| 3 | 2/2/2018 | Medicaid | $360.00 | Urine drug screen - 80361, 80320, 80335, 80358, 80345, 80356, 80365, 82575, 80353, 80324, 83986, 80346 |
| | | Medicare | $64.14 | Hydrocodone-Acetaminophen |
| 3 | 3/7/2018 | Medicaid | $360.00 | Urine drug screen - 80361, 80320, 80335, 80358, 80345, 80356, 80365, 82575, 80353, 80324, 83986, 80346 |
| | | Medicare | $48.72 | Hydrocodone/Acetaminophen |
| | | | $41.93 | Amphetamine/Dextroamphetamine |
| 3 | 3/29/2018 | Medicaid | $130.00 | Urine drug screen - 80307, 82575 |
| | | Medicare | $15.10 | Hydrocodone/Acetaminophen |
| | | | $4.35 | Amphetamine/Dextroamphetamine |
| 3 | 4/26/2018 | Medicaid | $130.00 | Urine drug screen - 80307, 82575 |
| | | Medicare | $15.10 | Hydrocodone/Acetaminophen |
| | | | $4.35 | Amphetamine/Dextroamphetamine |
| 3 | 5/24/2018 | Medicaid | $130.00 | Urine drug screen - 80307, 82575 |
| | | Medicare | $15.10 | Hydrocodone/Acetaminophen |
| | | | $4.35 | Amphetamine/Dextroamphetamine |
| 3 | 6/21/2018 | Medicaid | $160.00 | Urine drug screen - 80307, 82575, 80354 |
| 3 | 7/19/2018 | Medicaid | $130.00 | Urine Drug Screen - 80307, 82575 |
| | | Medicare | $14.83 | Hydrocodone/Acetaminophen |
| | | | $8.69 | Amphetamine/Dextroamphetamine |
| 3 | 8/16/2018 | Medicaid | $130.00 | Urine drug screen - 80307, 82575 |
| | | Medicare | $14.83 | Hydrocodone/Acetaminophen |

| 3 | 9/13/2018 | Medicaid<br>Medicare | $130.00<br>$14.83<br>$3.92 | Urine drug screen - 80307<br>Hydrocodone/Acetaminophen<br>Amphetamine/Dextroamphetamine |
|---|---|---|---|---|
| 3 | 11/8/2018 | Medicaid<br>Medicare | $130.00<br>$15.18<br>$4.00 | Urine drug screen - 80307, 82575<br>Hydrocodone/Acetaminophen<br>Amphetamine/Dextroamphetamine |
| 3 | 12/6/2018 | Medicaid<br>Medicare | $130.00<br>$66.65<br>$21.08 | Urine drug screen – 80307, 82575<br>Hydrocodone/Acetaminophen<br>Amphetamine/Dextroamphetamine |
| 3 | 1/7/2019 | Medicaid<br>Medicare | $130.00<br>$66.65<br>$21.08 | Urine drug screen - 80307, 82575<br>Hydrocodone/Acetaminophen<br>Amphetamine/Dextroamphetamine |
| 1 | 3/7/2018 | Medicaid | $360.00<br><br>$125.54<br>$26.94 | Urine drug screen - 80361, 80320, 80335, 80358, 80345, 80356, 80365, 82575, 80353, 83986, 80324, 80346<br>Oxycodone HCL<br>Diazepam |
| 1 | 3/31/2018 | Medicaid | $360.00<br><br>$125.54<br>$26.94 | Urine drug screen - 80361, 80320, 80335, 80358, 80345, 80356, 80365, 82575, 80353, 83986, 80324, 80346<br>Oxycodone HCL<br>Diazepam |
| 1 | 5/2/2018 | Medicaid | $360.00<br><br>$125.54<br>$26.94 | Urine drug screen - 80361, 80320, 80335, 80358, 80345, 80356, 80365, 82575, 80353, 83986, 80324, 80346<br>Oxycodone HCL<br>Diazepam |
| 1 | 5/31/2018 | Medicaid | $360.00<br><br>$125.54<br>$26.94 | Urine drug screen - 80361, 80320, 80335, 80358, 80345, 80356, 80365, 82575, 80353, 83986, 80324, 80346<br>Oxycodone HCL<br>Diazepam |
| 1 | 6/29/2018 | Medicaid | $390.00<br><br>$125.54<br>$26.94 | Urine drug screen - 80361, 80320, 80335, 80358, 80345, 80356, 80365, 82575, 80353, 80354, 83986, 80324, 80346<br>Oxycodone HCL<br>Diazepam |
| 1 | 7/26/2018 | Medicaid | $390.00<br><br>$125.54<br>$26.94 | Urine drug screen - 80361, 80320, 80335, 80358, 80345, 80356, 80365, 82575, 80353, 80354, 83986, 80324, 80346<br>Oxycodone HCL<br>Diazepam |
| 1 | 8/23/2018 | Medicaid | $390.00<br><br>$125.54<br>$26.94 | Urine drug screen - 80361, 80320, 80335, 80358, 80345, 80356, 80365, 82575, 80353, 80354, 83986, 80324, 80346<br>Oxycodone HCL<br>Diazepam |
| 1 | 9/20/2018 | Medicaid | $390.00<br><br>$125.54<br>$26.94 | Urine drug screen - 80361, 80320, 80335, 80358, 80345, 80356, 80365, 82575, 80353, 80354, 83986, 80324, 80346<br>Oxycodone HCL<br>Diazepam |
| 1 | 10/18/2018 | Medicaid | $390.00 | Urine drug screen - 80361, 80320, 80335, 80358, 80345, 80356, 80365, 82575, 80353, 80354, 83986, 80324, 80346 |

| | | | | |
|---|---|---|---|---|
| | | | $125.54 | Oxycodone HCL |
| | | | $26.94 | Diazepam |
| 1 | 11/15/2018 | Medicaid | $390.00 | Urine drug screen - 80361, 80320, 80335, 80358, 80345, 80356, 80365, 82575, 80353, 80354, 83986, 80324, 80346 |
| | | | $125.54 | Oxycodone HCL |
| | | | $26.94 | Diazepam |
| 1 | 12/13/2018 | Medicaid | $390.00 | Urine drug screen - 80361, 80320, 80335, 80358, 80345, 80356, 80365, 82575, 80353, 80354, 83986, 80324, 80346 |
| | | | $125.54 | Rx, Oxycodone HCL |
| | | | $26.94 | Rx, Diazepam |
| 1 | 1/10/2019 | Medicaid | $390.00 | Urine drug screen - 80361, 80320, 80335, 80358, 80345, 80356, 80365, 82575, 80353, 80354, 83986, 80324, 80346 |
| | | | $125.54 | Oxycodone HCL |
| | | | $26.94 | Diazepam |
| 1 | 2/7/2019 | Medicaid | $390.00 | Urine drug screen - 80361, 80320, 80335, 80358, 80345, 80356, 80365, 82575, 80353, 80354, 83986, 80324, 80346 |
| | | | $125.54 | Oxycodone HCL |
| | | | $26.94 | Diazepam |

## CONCLUSION

47. Based on the above listed facts and circumstances, I believe and assert that there is probable cause to believe that MARTIN ESCOBAR has violated Title 21, United States Code, Section 841, and Title 18, United States Code, Section 1347, and that these offenses occurred in the Northern District of Ohio, Eastern Division.

48. I request that a Complaint and Arrest Warrant issue for MARTIN ESCOBAR.

Patricia A. Richardson
Task Force Officer
Drug Enforcement Agency

Sworn to and subscribed before me this 19 day of November 2019.

George J. Limbert
United States Magistrate Judge
Northern District of Ohio
Eastern Division

19