# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 4:20-cr-167 |
| | ) | |
| Plaintiff, | ) | Judge Donald C. Nugent |
| | ) | |
| v. | ) | **DEFENDANT'S MOTION TO** |
| | ) | **WITHDRAW HIS GUILTY PLEAS** |
| MARTIN ESCOBAR, | ) | |
| | ) | |
| Defendant. | ) | |

Defendant Martin Escobar moves the Court, under Rule 11(d)(2) of the Federal Rules of

Criminal Procedure, to withdraw his guilty pleas. (*See* Doc. 83). Because the Court has yet to

impose a sentence, Dr. Escobar may withdraw his guilty pleas if he "show[s] a fair and just

reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). Dr. Escobar can make this

showing. A few weeks ago, the United States Supreme Court held that when the government

prosecutes a physician—like Dr. Escobar—with violating the Controlled Substances Act, the

government "must prove beyond a reasonable doubt that the defendant ***knowingly*** or

***intentionally*** acted in an unauthorized manner." *Ruan v. United States*, 142 S. Ct. 2370, 2382

(2022) (emphasis added). Here, however, the government did not plead that Escobar knowingly

acted in an unauthorized manner (Superseding Indictment ¶ 30, Doc. 54), nor did it explain at the

change of plea hearing that it needed to prove this *mens rea* element. (Plea Hr'g Tr. 14, Doc. 90).

The Supreme Court's recent holding, coupled with the Indictment's defects and the

insufficient factual basis for the plea proffered by the government, provide fair and just reasons

for withdrawing Escobar's guilty plea. What's more, had Dr. Escobar known that the Supreme

Court granted certiorari in *Ruan* and had he known that the government must prove that he

knowingly acted in an unauthorized manner, he would have made a different decision in January

2022. He would not have pleaded guilty and would have proceeded to trial. Because Dr. Escobar

has shown fair and just reasons for requesting withdrawal, he respectfully requests that the Court

grant this motion and permit him to proceed to trial before a jury of his peers.

      A memorandum in support of this motion is attached.

Dated: July 28, 2022

                                  Respectfully submitted,

                                  */s/ Nicholas R. Oleski*
                                  Robert T. Glickman (0059579)
                                  Nicholas R. Oleski (0095808)
                                  MCCARTHY, LEBIT, CRYSTAL
                                   & LIFFMAN CO., LPA
                                  1111 Superior Avenue East
                                  Suite 2700
                                  Cleveland, Ohio 44114
                                  Phone: (216) 696-1422
                                  Email: rtg@mccarthylebit.com
                                         nro@mccarthylebit.com

                                  *Counsel for Defendant Martin Escobar*

2

{01722681-3}

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 4:20-cr-167 |
| | ) | |
| Plaintiff, | ) | Judge Donald C. Nugent |
| | ) | |
| v. | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **DEFENDANT'S MOTION TO** |
| MARTIN ESCOBAR, | ) | **WITHDRAW HIS GUILTY PLEAS** |
| | ) | |
| Defendant. | ) | |

## I.     INTRODUCTION

Last month, the United States Supreme Court held that the government must prove an additional element when it charges a doctor with illegal prescribing: it must show that the doctor knew he lacked authorization to write the prescription. The government here charged Defendant Martin Escobar with illegal prescribing, under the Controlled Substances Act (CSA). Dr. Escobar—as his honorific reflects—is a doctor; he was authorized to write prescriptions for controlled substances. *See* 21 C.F.R. § 1306.04(a) (a prescription is only authorized when a doctor issues it "for a legitimate medical purpose . . . acting in the usual course of his professional practice"). So, under now governing law, the government "must prove beyond a reasonable doubt that [knew] knew that he or she was acting in an unauthorized manner, or intended to do so." *Ruan v. United States*, 142 S. Ct. 2370, 2375 (2022).

But at the time Dr. Escobar pleaded guilty, neither the Court nor the government explained that the government needed to make this showing. At the time, that may have been understandable. Dr. Escobar pleaded guilty in January 2022, and the Supreme Court published *Ruan* in late June 2022. Yet, this failure was error nonetheless. And this failure was harmful. In CSA cases, a doctor's principal defense is that he was acting within the scope of his

1

authorization—that he was acting in the usual course of professional practice and for a legitimate medical purpose. *See Ruan*, 142 S. Ct. at 2377 ("in § 841 prosecutions, a lack of authorization is often what separates wrongfulness from innocence"). Before *Ruan*, this was judged purely objectively based on what a reasonable doctor would have done, but *Ruan* makes clear that this is a subjective standard too. The government must prove that the doctor knew that his prescriptions were not authorized.

The Court and the government's failure to explain this to Dr. Escobar violated Rule 11 of the Federal Rules of Criminal Procedure. This Rule requires the Court ensure that Dr. Escobar understood the nature of each charge to which he pleaded. And it requires the Court ensure that there is a factual basis for the plea. Neither was met here. The government and the Court failed to tell Dr. Escobar of the *Ruan* knowledge requirement—***the*** critical element of the CSA charges. This failure rendered Dr. Escobar's plea unknowing and defective.

Further, Dr. Escobar can otherwise show fair and justice reasons for requesting withdrawal, given the change in intervening law. Put simply, Dr. Escobar would not have pleaded guilty had he known that the government must prove that he knew that his prescriptions were not authorized.

The Court should vacate Dr. Escobar's guilty pleas.

## II.    BACKGROUND

The government arrested Dr. Escobar in late 2019. A few months later, a grand jury returned a 145-count indictment. (Doc. 15). 91 of those counts charged violations of the CSA, and the other 54 charged violations of the healthcare fraud statute. These violations of the healthcare fraud statute were premised on the CSA counts. (*See* Indictment ¶¶ 47-48, Doc. 15). Two of the CSA counts alleged that Dr. Escobar's distribution of controlled substances resulted

{01722681-3}

in death. (*Id.* ¶¶ 33-42). If convicted of these counts, Dr. Escobar faced a mandatory minimum term of imprisonment of at least 20 years. 21 U.S.C. § 841(b)(1)(C).

A little over a year later, the government superseded its indictment. (Doc. 54). The government reduced the counts from 145 to 86. But its theory remained the same: Dr. Escobar violated the CSA and the healthcare fraud statute by illegally prescribing controlled substances. The Superseding Indictment retained the two counts of illegal prescribing resulting in death.

Dr. Escobar is a medical doctor and was authorized to issue prescriptions to his patients. (Superseding Indictment ("SI") ¶¶ 6-8, Doc. 54). Under the CSA, it is a federal crime for "any person knowingly or intentionally . . . to manufacture, distribute, or dispense" a controlled substance, "[e]xcept as authorized by this subchapter." 21 U.S.C. § 841(a)(1). The subchapter requires physicians to "obtain annually a registration issued by the Attorney General in accordance with the rules and regulations promulgated by him." *Id.* § 822(a)(1)-(2). One of those rules provides that an "effective" prescription is one that is "issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." 21 C.F.R. § 1306.04(a). Dr. Escobar was so authorized to write prescriptions: "As a medical doctor licensed in Ohio, [Dr. Escobar] was a 'practitioner' within the meaning of the CSA. He was also registered to prescribe controlled substances …" (SI ¶ 7, Doc. 54). The government alleged, however, that Dr. Escobar exceeded the scope of his authorization (and thus violated a criminal law) by "issuing prescriptions outside the usual course of professional practice and not for a legitimate medical purpose." (*Id.* ¶ 30).

After the government filed the Superseding Indictment, the Court granted several motions to continue trial. (Docs. 60, 76, 78, Min. Order, Oct. 26, 2021). In January 2022—about a month before trial—Dr. Escobar executed a plea agreement. (Doc. 84). Under the plea agreement, Dr.

{01722681-3}

Escobar agreed to plead guilty to every count in the Superseding Indictment, but one. The government agreed to dismiss Count 55 (which charged Dr. Escobar with maintaining a drug-involved premises, in violation of 21 U.S.C. § 856(a)(1)). (Plea Agreement ¶ 8, Doc. 84). Among other things, Dr. Escobar pleaded guilty to both counts of distributing controlled substances that resulted in death, a plea that subjected him to a mandatory minimum term of imprisonment of 20 years. (Plea Agreement ¶¶ 2, 9, Doc. 84); 21 U.S.C. § 841(b)(1)(C). The plea agreement described the elements of the CSA offenses as follows:

| **21 U.S.C. § 841(a)(1): Distribution of a Controlled Substance (Licensed Prescriber)** |
|---|
| 1: Defendant knowingly or intentionally distributed or dispensed a controlled substance; |
| 2: Defendant knew at the time of the distribution or dispensing that substance was a controlled substance; and |
| 3: Defendant's act was not for a legitimate medical purpose and was outside the usual course of professional practice. |

| **21 U.S.C. § 859: Distribution of a Controlled Substance to a Person Under Twenty-one Years of Age (Licensed Prescriber)** |
|---|
| 1: Defendant knowingly or intentionally distributed or dispensed a controlled substance; |
| 2: Defendant knew at the time of the distribution or dispensing that the substance was a controlled substance; |
| 3: Defendant's act was not for a legitimate medical purpose and was outside the usual course of professional practice; |
| 4: Defendant was at least eighteen years of age at the time of the distribution or dispensing; and |
| 5: The person to whom Defendant distributed or dispensed the controlled substance was under twenty-one years of age. |

| **21 U.S.C. § 841(a)(1) & (b)(1)(C) Penalty Enhancement: Distribution of a Controlled Substance (Licensed Prescriber) Resulting in Death** |
|---|
| 1: Defendant knowingly or intentionally distributed or dispensed a controlled substance; |
| 2: Defendant knew at the time of the distribution or dispensing that the substance was a controlled substance; |
| 3: Defendant's act was not for a legitimate medical purpose and was outside the usual course of professional practice; |

4

> 4: That the deceased victim would not have died but for the use of that same controlled substance distributed or dispensed by Defendant; and
>
> 5: Defendant was part of the distribution chain that placed the same controlled substance into the hands of the deceased victim, including by prescribing that controlled substance to the deceased victim.

(Plea Agreement ¶¶ 12, Doc. 84). The agreement did not explain that Dr. Escobar had to ***know*** that his act "was not for a legitimate medical purpose and was outside the usual course of professional practice."

Before Dr. Escobar executed the plea agreement, the United States Supreme Court granted certiorari in two cases—like this one—involving physicians charged criminally with violating the CSA. *Ruan v. United States*, 142 S. Ct. 457 (U.S. Nov. 5, 2021) (mem.); *Kahn v. United States*, 142 S. Ct. 457 (U.S. Nov. 5, 2021) (mem.). The Court consolidated these cases for review.

In *Ruan*, the Supreme Court granted certiorari to decide

> whether a physician alleged to have prescribed controlled substances outside the usual course of professional practice may be convicted under Section 841(a)(1) without regard to whether, in good faith, he "reasonably believed" or "subjectively intended" that his prescriptions fall within that course of professional practice.

Pet. at i, *Ruan v. United States*, No. 20-1410 (U.S. Apr. 5, 2021).

And in *Kahn*, the Court agreed to resolve three questions:

> 1.      Where the government prosecutes a medical practitioner under the Controlled Substances Act for issuing a prescription outside "the usual course of professional practice," is the government required to prove that the doctor knew or intended that the prescription be outside the scope of professional practice?
>
> 2.      Does a "good faith" defense in the context of a licensed medical practitioner prosecuted under the Controlled Substances Act protect doctors who have an honest but mistaken belief that they have issued the charged prescription in "the usual course of

5

professional practice;" and, if so, must that belief be objectively reasonable?

3.      Should the "usual course of professional practice" and "legitimate medical purposes" prongs of C.F.R § 1306.04(a) be read in the conjunctive or the disjunctive?

Pet. at 1, *Kahn v. United States*, No. 21-5261 (U.S. July 26, 2021).

The Supreme Court's decision in those cases would have been of great import to Dr. Escobar's case.[1] But he did not know that. When he executed the plea agreement in January 2022—more than two months after the Supreme Court granted certiorari—he did not know the Court agreed to resolve those questions. (Ex. A, Declaration of Martin Escobar ¶¶ 5, 7).

At the change of plea hearing, the Court and the government described the elements of the offenses the same way the plea agreement did. (*See* Plea Hr'g Tr. 14-15, Doc. 90). Dr. Escobar then pleaded guilty to Counts 1-54 and 56-86 of the Superseding Indictment. (*Id.* at 45-60). The Court found that Dr. Escobar "entered each one of the guilty pleas knowingly, voluntarily, of [his] own free will, and without any promises, threats, or coercion." (*Id.* at 60). The Court also found a factual basis to support the pleas. (*Id.*).

Six months after Dr. Escobar pleaded guilty, the Supreme Court decided *Ruan* and *Kahn*. The Court reversed the judgments of the courts of appeals because the jury instructions in those cases failed to convey that "the Government must prove beyond a reasonable doubt that the defendant ***knowingly*** or ***intentionally*** acted in an unauthorized manner." *Ruan v. United States*, 142 S. Ct. 2370, 2382 (2022) (emphasis added). As discussed more below, the government and

---

[1] When the Supreme Court grants certiorari, it is likely to reverse and rule for the petitioners, which would be a ruling for the physicians in *Ruan* and *Kahn*. "Since 2007, SCOTUS has released opinions in 1,128 cases. Of those, it reversed a lower court decision 805 times (71.4 percent) while affirming a lower court decision 315 times (27.9 percent)." *SCOTUS case reversal rates (2007 - Present)*, Ballotpedia, https://ballotpedia.org/SCOTUS_case_reversal_rates_(2007_-_Present) (last visited July 28, 2022).

6

the Court failed to tell Dr. Escobar that the government here needed to make this showing. This rendered Dr. Escobar's guilty pleas invalid.

Two weeks ago, undersigned counsel entered their appearance on behalf of Dr. Escobar. (Doc. 91). Because the Court did not comply with Rule 11 during the plea colloquy and because Dr. Escobar can otherwise show fair and justice reasons for requesting withdrawal of his guilty pleas, the Court should vacate his guilty pleas.

## III.  LEGAL STANDARD

"A defendant may withdraw a plea of guilty or nolo contendere after the court accepts the plea, but before it imposes sentence if: the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). In the Sixth Circuit, as in other circuits, a multi-factor balancing test has been developed to guide district courts in deciding whether to grant a motion to withdraw a guilty plea. The factors in this Circuit are the following:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008) (citing *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994)). "No one factor controls; the list is general and nonexclusive." *United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996).

{01722681-3}

IV.    **ARGUMENT**

A.    **The government and the Court did not inform Dr. Escobar of the nature of the offenses to which he was pleading guilty, nor did the government proffer a sufficient factual basis.**

At every stage of this proceeding—from the search warrant affidavits to the criminal complaint to the indictment to its expert reports to the plea colloquy—the government has taken the position that it did not need to prove that Dr. Escobar knew that his prescriptions were unauthorized. That was understandable. At the time, the law in this Circuit was that the government, in an illegal prescribing case, needed only to prove that the doctor "prescribed the drug without a legitimate medical purpose and outside the course of professional practice." *United States v. Elliott*, 876 F.3d 855, 865 (6th Cir. 2017) (citations omitted). This was an objective, not subjective, standard, meaning if a "reasonable doctor under the circumstances could have believed, albeit mistakenly, that he had acted within the scope of ordinary professional medical practice for a legitimate medical purpose," the government could not win a conviction. *United States v. Godofsky*, 943 F.3d 1011, 1026-27 (6th Cir. 2019). But the defendant doctor's belief that he acted within the scope of ordinary professional medical practice for a legitimate medical purpose was not a defense. *Id.* at 1026; *accord United States v. Enmon*, 686 F. App'x 769, 773 (11th Cir. 2017) ("whether [a physician] had a good faith belief that he dispensed a controlled substance in the usual course of his professional practice is irrelevant").

But then came *Ruan v. United States*. There, in a decision published a month ago, the United States Supreme Court held that the government must prove an additional element when it charges a doctor, like Dr. Escobar, with violating the CSA. 142 S. Ct. 2370, 2375 (2022). The Court explained that the "Controlled Substances Act, codified at 21 U S.C. §841, makes it a federal crime, '*[e]xcept as authorized*[,] . . . for any person knowingly or intentionally . . . to

8

manufacture, distribute, or dispense . . . a controlled substance,' such as opioids." *Id.* at 2374-75 (citing 21 U.S.C. § 841(a)). Under the CSA, a medical doctor is authorized to prescribe controlled substances to his patients if the prescription is "issued for a legitimate medical purpose" and the doctor is "acting in the usual course of his professional practice." 21 C.F.R. § 1306.04(a). In *Ruan*, the Supreme Court considered whether the "statute's 'knowingly or intentionally' *mens rea* applies to authorization." 142 S. Ct. at 2375. The Court answered in the affirmative: "the Government must prove beyond a reasonable doubt that the defendant knew that he or she was acting in an unauthorized manner, or intended to do so." *Id.*[2]

In doing so, the Court rejected the objective good-faith and reasonable person standard the Sixth Circuit endorsed in *Godofsky* and other cases. According to the Court, this "standard would turn a defendant's criminal liability on the mental state of a hypothetical 'reasonable' doctor, not on the mental state of the defendant himself or herself." *Id.* at 2381. This negligence standard is anathema to the criminal law. *Id.*; *see also Elonis v. United States*, 575 U.S. 723, 737-38 (2015) ("Such a 'reasonable person' standard is a familiar feature of civil liability in tort law, but is inconsistent with the conventional requirement for criminal conduct—awareness of some wrongdoing." (cleaned up)). At bottom, to obtain a criminal conviction against a doctor under the CSA, the government must "prov[e] that a defendant knew or intended that his or her conduct was unauthorized." *Ruan*, 142 S. Ct. at 2382.

Under *Ruan*, the rough elements the government must prove in CSA prosecution are as follows:

---

[2] To be sure, the Court said the requirement that the government prove this additional element is only triggered "[a]fter a defendant produces evidence that he or she was authorized to dispense controlled substances." *Ruan*, 142 S. Ct. at 2375. But this, as explained more below, does not matter here. The government alleged in this indictment that Dr. Escobar was authorized to prescribe controlled substances. (SI ¶ 7, Doc. 54). So, the government has **always** borne the burden of proving that Dr. Escobar knew that he was acting in an unauthorized manner.

1. <u>First</u>, that the defendant dispensed and/or distributed the controlled substances identified in the applicable count of the indictment.

2. <u>Second</u>, that the defendant acted knowingly or intentionally in distributing or dispensing these controlled substances.

3. <u>Third</u>, that the defendant's act was not for a legitimate medical purpose and was outside the course of professional practice.

4. And <u>fourth</u>, that the defendant ***knew*** that his act was not for a legitimate medical purpose and was outside the course of professional practice.

The government, in its indictment and at the plea colloquy, failed to explain to Dr. Escobar that it needed to prove this fourth element. In the indictment, the government simply alleged that Dr. Escobar "knowingly and intentionally distributed and dispensed Schedule II and Schedule IV controlled substances outside the usual course of professional practice and not for a legitimate medical purpose." (SI ¶ 30, Doc. 54). It said the same when asked by the Court at the change of plea hearing to explain the elements of the CSA offenses and the factual basis for the plea. (Plea Hr'g Tr. 13-14, 26, Doc. 90). And the Court, before asking for Dr. Escobar's pleas to the CSA charges, explained the elements the same way: "So on or about the following dates, in the Northern District of Ohio, Eastern Division, that you knowingly and intentionally distributed and dispensed Schedule II and Schedule IV controlled substances as described, by count, in the table below by issuing prescriptions outside the usual course of professional practice and not for a legitimate medical purpose." (*Id.* at 45). Neither the Court nor the government explained, as *Ruan* now requires, that Dr. Escobar had to issue the prescriptions ***knowing*** he was doing so outside the usual course of professional practice and not for a legitimate medical purpose.

Although *Ruan* explains that the government is only required to prove this fourth element "[a]fter a defendant produces evidence that he or she was authorized to dispense controlled substances," 142 S. Ct. at 2375, this is of no matter here. The government at every stage of this proceeding has conceded that Dr. Escobar was authorized to dispense controlled substances. It alleged as much (SI ¶ 7, Doc. 54), although it was not required to do so. *See Ruan*, 142 S. Ct. at 2380 (noting that 21 U.S.C. § 885 "absolves the Government of having to allege, in an indictment, the inapplicability of every statutory exception in each Controlled Substances Act prosecution"). And it acknowledged as much during the plea colloquy. (Plea Hr'g Tr. 21, Doc. 90). Because the government essentially stipulated in its pleadings that Dr. Escobar was authorized to dispense controlled substances, it at all times needed to show that Dr. Escobar knew he was acting in an unauthorized manner. *See Ruan*, 142 S. Ct. at 2380-81 (noting that lack of authorization "is sufficiently like an element [of an offense]" and that once a defendant shows that he was authorized to dispense controlled substances, "the Government must prove lack of authorization beyond a reasonable doubt").

Because the Court and the government did not tell Dr. Escobar that the government needed to make this showing, his guilty plea is invalid.

"[A] guilty plea is no such trifle, but a grave and solemn act, which is accepted only with care and discernment." *United States v. Hyde*, 520 U.S. 670, 677 (1997) (quotations omitted). Indeed, "[t]he fairness and adequacy of the procedures on acceptance of pleas of guilty are of vital importance in according equal justice to all in the federal courts." Fed. R. Crim. P. 11 advisory committee note. Among other requirements, the Rule requires that, "[b]efore the court accepts a plea of guilty[,] . . . the court must address the defendant personally in open court" and "must inform the defendant of, and determine that the defendant understands," a list of fifteen

11

elements, including certain rights the defendant has agreed to waive, the range of possible sentences the defendant may receive, and, most relevant here, "the nature of each charge to which the defendant is pleading." Fed. R. Crim. P. 11(b)(1). Rule 11(b)(1)(G) calls for the Court to inform the defendant of and ensure "that the defendant understands . . . the nature of each charge to which the defendant is pleading." Fed. R. Crim. P. 11(b)(1)(G) (emphasis added). And Rule 11(b)(3) focuses on the Court's own determination, before entering judgment on a guilty plea, "that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3).

Dr. Escobar was not informed of the nature of each charge to which he was pleading. "At a minimum, the defendant must understand the 'critical' or 'essential' elements of the offense to which he or she pleads guilty." *United States v. Valdez*, 362 F.3d 903, 909 (6th Cir. 2004) (citing *Bousley v. United States*, 523 U.S. 614, 618-19 (1998)). "Because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." *United States v. McCreary-Redd*, 475 F.3d 718, 723 (6th Cir. 2007) (quotations omitted). "When the crime alleged is a complex one, or an uncommon one as in this case, it is incumbent upon the district court to closely examine the relationship between the law and the acts of the defendant." *United States v. Goldberg*, 862 F.2d 101, 109 (6th Cir. 1988). "Some rehearsal of the elements of the offense is necessary for any defendant. Failure to identify the elements of the offense is error and cannot be said to be harmless, even for an educated, well-represented defendant." *United States v. Syal*, 963 F.2d 900, 905 (6th Cir. 1992) (citations omitted). This means that when an element essential to an offense is not discussed during the plea colloquy, a guilty plea is "unknowing." *McCreary-Redd*, 475 F.3d at 725 (holding that because district court did not discuss an "element that is essential" to the charge, the defendant's plea was "unknowing").

12

As in *McCreary-Redd*, the government and this Court did not discuss an essential element to the CSA charges during the plea colloquy. Neither explained to Dr. Escobar that the government was required to prove that he knew he was acting in an unauthorized manner. There's no question this an essential element: "in § 841 prosecutions, a lack of authorization is often what separates wrongfulness from innocence." *Ruan v. United States*, 142 S. Ct. 2370, 2377 (2022). Indeed, "[w]e normally would not view [prescriptions] as inherently illegitimate; we expect, and indeed usually want, doctors to prescribe the medications that their patients need." *Id.* That is why the lack of authorization element and its corresponding knowingly *mens rea* is a critical element in a CSA case.[3] The Court and the government needed to tell Dr. Escobar that this was an element of the offense. Although the government explained that it needed to prove lack of authorization (Plea Hr'g Tr. 13-14, 26, Doc. 90), it did not explain that it needed to show that Dr. Escobar knew or intended to act without authorization. Thus, Dr. Escobar did not understand the nature of the charges against him, in violation of Rule 11(b)(1)(G). *See McCreary-Redd*, 475 F.3d at 725 (holding district court's failure to inform defendant of intent-to-distribute element rendered the plea unknowing); *Goldberg*, 862 F.2d at 109 (holding district court's failure to inform defendant of concealment element rendered the plea unknowing). This violation, as a matter of law, cannot be harmless. *See McCreary-Redd*, 475 F.3d at 726; *United States v. Syal*, 963 F.2d 900, 905 (6th Cir. 1992) ("Failure to identify the

---

[3] Justice Alito's concurring opinion in *Ruan* makes clear that the Court viewed lack of authorization as an element of a CSA offense. Justice Alito would have held that lack of authorization is not an element but an affirmative defense. *Ruan*, 142 S. Ct. at 2383 (Alito, J., concurring). The majority disagreed: "That statutory requirement [lack of authorization], while differing from an element in some respects, is sufficiently like an element in respect to the matter at issue here as to warrant similar legal treatment." *Id.* at 2380 (majority op.). As a result, once it is established that the defendant was authorized to dispense controlled substances—as Dr. Escobar was here—then "the Government must prove lack of authorization beyond a reasonable doubt." *Id.* at 2381.

{01722681-3}

elements of the offense is error and cannot be said to be harmless, even for an educated, well-represented defendant.").

Nor did the government supply an adequate factual basis for the plea. Rule 11(b)(3) states that "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." "The purpose of this requirement is to ensure the accuracy of the plea through some evidence that a defendant actually committed the offense." *McCreary-Redd*, 475 F.3d at 722 (cleaned up). The government failed to make this showing. To be sure, the government listed off a laundry list of professional guidelines that Dr. Escobar allegedly failed to follow. (Plea Hr'g Tr. 23-26, Doc. 90). But this simply connotes "an impermissible inference" of Dr. Escobar's knowledge—his intent—to exceed the scope of his authorization. *See McCreary-Redd*, 475 F.3d at 724; *Goldberg*, 862 F.2d at 106 ("In our judgment, to permit the district court to infer a factual basis in the absence of a record demonstrating the existence of a factual basis would tend to negate the well-established safeguards inherent in the Rule 11[(b)(3)] mandate."). The government failed to proffer an adequate factual basis for Dr. Escobar's plea.

True, the Court may consider the PSR in evaluating whether the government proffered a sufficient factual basis, *United States v. Pitts*, 997 F.3d 688, 698 (6th Cir. 2021), but the PSR suffers from the defects as the plea colloquy. Indeed, parts of the PSR are identical to the plea agreement and plea colloquy. (*Compare* PSR ¶ 18, Doc. 93, *with* Plea Hr'g Tr. 23-26, Doc. 90).

The Second Circuit considered a similar issue in *United States v. Balde*, 943 F.3d 73 (2d Cir. 2019). The defendant there pleaded guilty to unlawful possession of a firearm by an illegal alien. *Id.* at 77. During his plea colloquy, the defendant was not informed (because at the time this was not an element) that the government needed to prove that he knew he was illegally in the United States. *Id.* at 78, 80. After he pleaded guilty and was sentenced, the Supreme Court

14

decided *Rehaif v. United States*, 139 S. Ct. 2191 (2019), which held—like *Ruan*—that the government needed to prove that the defendant knew he was unlawfully present in the United States. *Balde*, 943 F.3d at 80, 87 (citing *Rehaif*, 139 S. Ct. at 2195).

On appeal, the defendant argued that the government's and the district court's failure to advise him of this *mens rea* element rendered his guilty plea defective. The Second Circuit agreed and held that the district court ***plainly*** erred: "the failure of the district court to advise Balde that the government would need to establish beyond a reasonable doubt at trial that he knew that he was illegally present in the United States, or to examine the record to determine whether there was a factual basis for finding such knowledge, was error." *Balde*, 943 F.3d at 96; *id.* at 98 ("We are therefore convinced that Balde has demonstrated plain error here, and that his guilty plea must be vacated."); *see also United States v. Lockhart*, 947 F.3d 187, 196 (4th Cir. 2020) (en banc) ("The government concedes, and we agree, that the magistrate judge plainly erred in accepting Lockhart's guilty plea based on this pre-*Rehaif* understanding of the law.").

The same analysis applies here. The Court erred by failing to advise Dr. Escobar that the government would need to prove that he knew, when he dispensed the controlled substances, that he lacked authorization to do so. And there's little question that but for this error Dr. Escobar would not have entered this plea. (*See* Escobar Decl. ¶¶ 5-6). As the Supreme Court explained, "in § 841 prosecutions, a lack of authorization is often what separates wrongfulness from innocence." *Ruan v. United States*, 142 S. Ct. 2370, 2377 (2022). Under previous law, this lack of authorization was judged objectively—would a reasonable doctor have written these prescriptions. *See United States v. Godofsky*, 943 F.3d 1011, 1026-27 (6th Cir. 2019). But now under *Ruan* that emphatically is not enough. 142 S. Ct. at 2381. Instead, the government must show that the doctor "knows that he or she is acting for a purpose foreign to medicine—such as

15

facilitating addiction or recreational drug abuse." *Id.* at 2389 (Alito, J., concurring); *accord United States v. Binder*, 26 F. Supp. 3d 656, 664 (E.D. Mich. 2014) ("[C]riminal culpability cannot turn on whether [a physician] pursued the best or most prudent course of treatment. Instead, the proper inquiry must be whether, when he prescribed controlled substances for patients who told him they were suffering serious physical pain, [the physician] was acting without any legitimate medical purpose and outside the usual course of professional practice."); *United States v. Feingold*, 454 F.3d 1001, 1011 (9th Cir. 2006) ("A practitioner becomes a criminal not when he is a *bad* or *negligent* physician, but when he ceases to be a physician *at all*.").

Dr. Escobar, though, explained that he *was* acting as a physician, that he was, in Justice Alito's words, prescribing controlled substances as "a valid means of pursuing a medical purpose." *Ruan*, 142 S. Ct. at 2389 (Alito, J., concurring). In his acceptance of responsibility statement, Dr. Escobar said that he "strove to treat the patients who needed [him] most"; that he "didn't see the value in having them repeat treatments that had limited benefit for them"; and that he "never intended to cause harm, only to help people." (PSR ¶ 39, Doc. 93); (*see also* Escobar Decl. ¶ 6 ("[W]hen I prescribed controlled substances, I was doing so to care for and treat my patients.")). To be sure, a jury might disbelieve Dr. Escobar's explanations or credit the government's circumstantial knowledge evidence, but he is entitled to have a jury of his peers make those findings. *See United States v. Balde*, 943 F.3d 73, 97 (2d Cir. 2019) ("Nevertheless, we cannot conclude on the present record that the government's arguments are so strong that Balde would have had no plausible defense at trial and no choice but to plead guilty, even had he known of the element announced in *Rehaif*.").

16

The United States Supreme Court held last month that the government must prove an additional *mens rea* element when it prosecutes a doctor under the CSA. The Court and the government did not tell Dr. Escobar that the government needed to prove this key element. This violated Rule 11 and rendered Dr. Escobar's plea unknowing. The Court should vacate his guilty pleas and allow him to proceed to trial.

**B.      Dr. Escobar can otherwise show fair and just reasons for withdrawal.**

The Sixth Circuit has set forth a multi-factor test to guide district courts in deciding motions to withdraw guilty pleas. "These factors are a general, non-exclusive list and no one factor is controlling." *United States v. Baker*, No. 3:17-cr-59, 2020 U.S. Dist. LEXIS 185427, at *22 (S.D. Ohio Oct. 6, 2020) (quoting *United States v. Catchings*, 708 F.3d 710, 718 (6th Cir. 2013)). These factors weigh in favor of permitting Dr. Escobar to withdraw his guilty pleas.

**1.** *Timing*. Under the first factor, we look at the amount of time between the plea and the motion to withdraw. Dr. Escobar pleaded guilty in January 2022 and filed this motion to withdraw in July 2022. We, therefore, acknowledge that "absent the Court's determination that this delay was justified, this factor weighs against withdrawal." *United States v. Osborne*, 565 F. Supp. 2d 927, 933 (E.D. Tenn. 2008).

**2.** *Justification*.  "The next factor for the Court to consider is whether any delay in defendant's filing of a motion to withdraw his guilty plea is justified." *Id.* Dr. Escobar's delay was justified. His principal argument that withdrawal is necessary is premised on the Supreme Court's decision in *Ruan*. That decision was published on June 27, 2022; Dr. Escobar's new counsel entered their appearance here on July 13, 2022; and have filed this motion to withdraw a little over two weeks later. An intervening change is governing law gives a defendant justification for filing a motion to withdraw. *See United States v. Ortega-Ascanio*, 376 F.3d 879,

17

885-86 (9th Cir. 2004). In short, Dr. Escobar was justified in his delay. He filed his motion to withdraw shortly after retaining new counsel and shortly after the Supreme Court announced a new rule of law that governs this case.

**3.** *Innocence*. "The third factor is whether the defendant has asserted or maintained his innocence." *Osborne*, 565 F. Supp. 2d at 934. Dr. Escobar has. Although he pleaded guilty, he has been clear that he "strove to treat the patients who needed [him] most" and that he "never intended to cause harm, only to help people." (PSR ¶ 39, Doc. 93); (*see also* Escobar Decl. ¶ 6 ("[W]hen I prescribed controlled substances, I was doing so to care for and treat my patients.")). In other words, he did not prescribe his patients controlled substances knowing that he was not authorized to do so.

But even if the Court finds that Dr. Escobar has not maintained his innocence, this factor should be given little weight given the defects in the Rule 11 plea colloquy. *See Osborne*, 565 F. Supp. 2d at 934 ("As such, this factor weighs against withdrawal. However, as discussed below, defendant's apparent confusion is one of the circumstances underlying his guilty plea considered by the Court.").

**4.** *Plea colloquy*. "The circumstances underlying the entry of the guilty plea comprise the next factor which the Court must consider." *Id.* at 934-35. As discussed above, the plea colloquy was insufficient, and Dr. Escobar's plea was not entered knowingly, voluntarily, and intelligently. *See id.* at 937 ("Though the Court took precautions at the change of plea hearing to ensure that defendant was entering his plea knowingly, voluntarily, and intelligently, the record now reveals that defendant may not have been aware of the law as it applied to him as he answered the Court's questions.").

What's more, Dr. Escobar did not know, at the time he entered his plea, that the Supreme Court had granted certiorari in *Ruan*. (Escobar Decl. ¶ 5). Had he known that it had, he would have made a different decision in January 2022. (*Id.*).

**5.** *Dr. Escobar's background*. "The next factor for the Court to consider is defendant's nature and background. Defendant's intelligence, sophistication, and understanding of the plea are relevant to the Court's analysis of this factor." *Osborne*, 565 F. Supp. 2d at 937. Dr. Escobar acknowledges that he is medical doctor, but his understanding of the plea was necessarily frustrated because the Court and the government failed to explain all the elements of the CSA offenses.

**6.** *Experience with the criminal justice system*. "The sixth factor the Court considers to determine whether Defendant's motion to withdraw the guilty plea is for a fair and just reason is the degree to which Defendant has had prior experience with the criminal justice system." *United States v. Ellis*, 470 F.3d 275, 285 (6th Cir. 2006). Dr. Escobar has no experience with the criminal justice system (*see* PSR ¶¶ 64-68, Doc. 93), so this factor weighs in favor of withdrawal.

**7.** *Government prejudice*. "The issue of prejudice to the government becomes relevant only if the defendant has established a fair and just reason to withdraw his guilty plea." *United States v. Wooden*, No. 3:15-CR-12-TAV-CCS, 2017 U.S. Dist. LEXIS 195934, at *11 (E.D. Tenn. Nov. 29, 2017). "Prejudice to the government can include wasted government resources and wasted judicial resources, but the time and expense of trial constitutes prejudice only when the government must spend time and expense preparing for trial beyond what would normally be expected due to the defendant's decision to withdraw his guilty plea." *Id.* (citations omitted). The government suffers little prejudice if the Court permits Dr. Escobar to withdraw his guilty plea.

It has completed its discovery obligations and produced an exhaustive expert report. Further, to

date, the parties have engaged in little pretrial motion practice, and, like in *Osborne*:

> The government has not indicated that it had already begun to
> prepare this case for trial beyond the pretrial litigation. The Court
> acknowledges that there has been some delay of the trial in this
> case due to defendant's guilty plea because, prior to the entry to
> defendant's guilty plea, this case was scheduled for trial on
> September 4, 2007. However, there is no evidence to indicate that
> any evidence or witnesses have become unavailable since the
> previously scheduled trial date, nor is there any indication that this
> delay prejudices the government in any other way. There are no
> codefendants who have already been sentenced and thus have lost
> their incentive to testify. There are no identifiable victims who will
> be prejudiced by a trial they though[t] was unnecessary due to
> defendant's guilty plea. Because the government has not advanced
> any argument of prejudice and the Court does not find any
> prejudice that outweighs defendant's fair and just reason for
> withdrawal, the Court will grant defendant's motion to withdraw
> his guilty plea and vacate his guilty plea.

565 F. Supp. 2d at 940. So too here.

The Court should vacate Dr. Escobar's guilty plea.

**C.     Dr. Escobar's guilty pleas to the healthcare fraud offenses must be vacated
too.**

Although Dr. Escobar pleaded guilty to non-CSA offenses, these pleas must be vacated

too. Dr. Escobar pleaded guilty to 30 counts of healthcare fraud. (Plea Agreement). To prove

healthcare fraud, the government must prove that Dr. Escobar "(1) created a scheme or artifice to

defraud a health care program, (2) implemented the plan, and (3) acted with intent to defraud."

*United States v. Bertram*, 900 F.3d 743, 748 (6th Cir. 2018). Because the criminal fraud statutes

incorporate some of the elements of common-law fraud, the statute requires that any falsehood

be material. *Neder v. United States*, 527 U.S. 1, 25 (1999). Here, the government alleged that Dr.

Escobar's scheme centered on his allegedly illegal prescribing, which resulted in healthcare

benefit companies "paying for medically-unnecessary controlled substances." (SI ¶ 47, Doc. 54).

20

The scheme also allegedly encompassed his billing for medically unnecessary urine screens. (*Id.* ¶ 48). Both theories, however, are premised on Dr. Escobar illegally prescribing controlled substances. (*See* PSR ¶ 33, Doc. 93). If controlled substances were issued pursuant to authorized prescriptions, then they were medically necessary. And the urine screens are "reasonable and necessary in patients with chronic pain to: determine the presence of other substances prior to initiating pharmacologic treatment[,] detect the presence of illicit drugs[, and] monitor adherence to the plan of care." *Drug Testing*, Centers for Medicare & Medicaid Services, https://www.cms.gov/medicare-coverage-database/view/lcd.aspx?LCDId=34645 (last visited July 27, 2022).

As a result, the healthcare fraud counts rise and fall with the CSA counts. Because Dr. Escobar has demonstrated that his pleas to the CSA counts should be vacated, so too must his guilty pleas to the healthcare counts.

## V.     CONCLUSION

For these reasons, the Court should permit Dr. Escobar to withdraw his plea and proceed to trial.

Dated: July 28, 2022                           Respectfully submitted,

                                               */s/ Nicholas R. Oleski*
                                               Robert T. Glickman (0059579)
                                               Nicholas R. Oleski (0095808)
                                               MCCARTHY, LEBIT, CRYSTAL
                                                 & LIFFMAN CO., LPA
                                               1111 Superior Avenue East
                                               Suite 2700
                                               Cleveland, Ohio 44114
                                               Phone: (216) 696-1422
                                               Email: rtg@mccarthylebit.com
                                                      nro@mccarthylebit.com

                                               *Counsel for Defendant Martin Escobar*

21

{01722681-3}

## CERTIFICATE OF SERVICE

I certify that the foregoing was electronically filed on July 28, 2022. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Nicholas R. Oleski
Nicholas R. Oleski (0095808)

{01722681-3}